1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mindspace, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-cv-1713 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| Todd Young, *et al.*, | ) | [Re:   Motion at docket 4] |
| | ) | |
| Defendants | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 4, plaintiff Mindspace, Inc. ("Mindspace") moved for a preliminary injunction requiring certain actions and prohibiting other actions by defendants Todd Young ("Young"); Jason Edwards ("Edwards"); Fiero Agency, Inc.; and Fiero LLC (collectively "Fiero").  Defendants filed a response at docket 18, to which Mindspace replied at docket at docket 29.  Following discovery relating to the request for an injunction, the court permitted the parties to file supplemental briefing.  Mindspace's supplement was filed at docket 68, and defendants' supplement was filed at docket 78. The parties advised the court that an evidentiary hearing was not necessary, but requested oral argument.  Argument was heard on December 17, 2014.

## II.  BACKGROUND

Mindspace is a "gamification" consultancy which solicits clients for whom it can provide marketing advice and programs based on the use of games.  The premise upon which Mindspace's business rests is that when a business engages customers and prospective customers in game-like relationships it improves the business' communications with and strengthens its' ties to those customers and prospective customers.  Airline frequent flyer programs are an example of gamification programs.

Mindspace is an Arizona corporation which has been operating since 2002.  It is owned by its president and chief operating officer Brent Shetler.  Securing gamification clients sometimes requires extensive efforts by Mindspace employees in identifying likely clients, introducing those prospects to the gamification concept as it could be applied to their businesses, and then selling Mindspace's services.  This effort may make use of case studies developed by Mindspace, and other materials which Mindspace considers to be proprietary information and trade secrets. The company has been successful: Among Mindspace's clients are major businesses such as Time Warner, Hyatt, Paramount, and Coca-Cola.

Mindspace hired Young–who had considerable experience in selling digital advertising–to be its director of business development on April 28, 2011.  In that position Young played a major role in obtaining new clients for Mindspace.  Edwards was recruited to work at Mindspace by Young.  Edwards was employed by Mindspace on November 2, 2012, to be Mindspace's technical director, a position which called for him to develop web-based products for use by Mindspace's clients.  Young and Edwards each signed a Proprietary Rights Agreement ("PRA") prepared by Mindspace,

-2-

which purports to set out numerous protections for Mindspace's business interests. The two PRAs are substantively identical.[1]

Mindspace terminated Edwards' employment on October 2, 2013.  There was some dispute about how much money Mindspace might owe Edwards.  This was eventually resolved, and as part of the resolution Edwards signed a separation agreement ("SA"), which purports to limit future actions by Edwards and provide additional protection for Mindspace's interests.  Young resigned from Mindspace on January 28, 2014.  Young and Mindspace did not execute a separation agreement.

Fiero is a gamification consultancy which competes with Mindspace.  Fiero is owned by Young and Edwards.  Mindspace accuses defendants of wrongfully using its proprietary information and trade secrets to advance Fiero's business.

In its complaint, Mindspace advances twelve claims which it denominates "counts."  Count One seeks injunctive relief based on alleged breaches of the PRAs, the SA, and fiduciary duties owed to Mindspace by Young and Edwards.  Count Two seeks damages based upon the alleged breach of the PRAs while Young and Edwards were still employed at Mindspace.  Count Three seeks damages based upon the alleged breach of the PRAs and the SA through wrongful use of confidential information.  Count Four seeks damages arising from defendants alleged solicitation of clients in violation of the PRAs and SA.  Count Five seeks damages based on the alleged breach of fiduciary duties by Young and Edwards.  Count Six seeks damages on the theory that defendants tortiously interferred with Mindspace's business

_____

[1]Young's PRA is dated 7/18/11, and Edwards' PRA is dated 11/2/12.

-3-

expectancy.  Count Seven seeks damages on the theory that defendants Edwards and Fiero tortiously interfered with Mindspace's employment contract with Young.  Count Eight seeks both injunctive relief and damages on the theory that defendants misappropriated Mindspace's trade secrets.  Count Nine seeks damages based on defendants violation of Arizona's law prohibiting unfair competition.  Count Ten seeks to recover for "harm in an amount to be proven at trial"[2] resulting from defendants' unjust enrichment.  Count Eleven alleges that defendants have violated the Lanham Act by engaging in false advertising for which they seek both damages and injunctive relief. Count Twelve, which might be called the "Kitchen Sink" count, accuses each defendant of aiding and abetting each other defendant giving rise to a claim for damages.

Of the twelve counts, the only ones which could support injunctive relief are Counts One, Eight, and Eleven.  It follows that injunctive relief turns upon Mindspace's assertion that Young and Edwards violated the PRAs, that Young violated the SA, that all defendants misappropriated Mindspace's trade secrets, and that all defendants have engaged in false advertising in violation of the Lanham Act.

## III.  JURISDICTION

The court has subject matter jurisdiction over the Lanham Act claim pursuant to 28 U.S.C. § 1331.  The court has subject matter jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

---

[2]Complaint, doc. 1 at para. 158.

## IV.  STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."[3]

## V.  DISCUSSION

To obtain injunctive relief beyond the relief already provided in the order at docket 97 on any of the claims which might support injunctive relief, Mindspace has the burden of proving irreparable harm.  As the Supreme Court has written, to obtain a preliminary injunction, a plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction."[4]  Elaborating on that point, the Court has explained that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm  is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[5]

Mindspace has not made a clear showing that it will suffer irreparable harm if a preliminary injunction (going beyond the relief already awarded) is not issued.  If defendants wrongfully obtain clients and secure revenue that would otherwise have been available to Mindspace, there is an adequate legal remedy.  The ensuing harm to

---

[3]*Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009) (quoting *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S.  7, 21 (2008).

[4]*Winter*, 555 U.S. at 21.

[5]*Id.*

Mindspace is capable of reasonable estimation and can be adequately remedied  by an

award of damages.  This assessment by the court is consistent with Mindspace's

complaint, which generally seeks both damages and injunctive relief for the very same

types of conduct.

## VI.  CONCLUSION

For the reasons above, the motion at docket 4 is DENIED, except for the relief

already provided by the order at docket 97.

DATED this 31st day of December 2014.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE